April 20, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 APR 20 P3: 06

BY:

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| LUCKY DEVELOPMENT CO., LTD., | ) | APPEAL NO. 91-003 |
| Plaintiff, | ) | CIVIL ACTION NO. 90-828 |
| | ) | |
| vs. | ) | |
| | ) | |
| TOKAI, U.S.A., INC., | ) | |
| Defendant/Appellee, | ) | OPINION |
| | ) | |
| and | ) | |
| | ) | |
| ANTONIO M. ATALIG, | ) | |
| Appellant. | ) | |
| | ) | |

Argued October 18, 1991

Counsel for Appellant: Theodore R. Mitchell
P. O. Box 2020
Saipan, MP 96950

and

Miguel S. Demapan
Demapan and Atalig
P. O. Box 1638
Saipan, MP 96950

Counsel for Defendant/
Appellee: David R. Nevitt
Donald C. Williams
Marcia K. Schultz
Carlsmith Ball Wichman Murray
Case Mukai & Ichiki
P. O. Box 241 CHRB
Saipan, MP 96950

**BEFORE:** DELA CRUZ, Chief Justice, and VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

## FACTS

Plaintiff, Lucky Development Co., Ltd. (hereafter Lucky) sued Tokai, U.S.A., Inc. (hereafter Tokai) and other defendants alleging seven causes of actions. The first cause of action sought a declaratory judgment upholding the validity of a Conditional Lease Agreement (hereafter CLA) between Lucky and Antonio Guerrero (hereafter Guerrero). The second cause of action was for specific performance. The third was for breach of contract. The fourth was for fraud. The fifth was for a violation of the Consumer Protection Act and for unfair business practice. The sixth was for intentional interference with contract relations. The seventh was for interference with economic relations.

The first cause of action mentioned Tokai but did not seek specific relief against it. The fifth, sixth, and seventh counts sought specific relief against Tokai.

Tokai moved to dismiss the case under Rule 12(b)(6), Com.R.Civ.P. In addition, it sought sanctions under Rule 11, Com.R.Civ.P. The motion to dismiss became moot by the filing of an amended complaint by Lucky's subsequent counsel. The trial court imposed Rule 11 sanctions against Lucky's former counsel, Antonio Atalig (hereafter Atalig), on November 9, 1990. On December 19, 1990, the trial court assessed sanctions in the amount of $3,640.

83

Atalig filed a notice of appeal on January 18, 1991, appealing both the November 9 and December 19 orders.

## ISSUE PRESENTED

The issue for review is whether the Superior Court abused its discretion in its Order, dated November 9, 1990, (hereafter Order) imposing Rule 11 sanctions.

## STANDARD OF REVIEW

We adopt and approve the standard of review for rulings on Rule 11 as stated in Cooter & Gell v. Hartmarx Corp., 110 S.Ct. 2447 (1990), and Townsend v. Holman Consulting Corp., 914 F.2d 1136 (9th Cir. 1990). Appellate review of an imposition of Rule 11 sanctions is made under an abuse of discretion standard. However, as noted in the above two cases, it would be an abuse of discretion if a court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.

## ANALYSIS

At oral argument, counsel for Atalig noted to the Court certain concerns that he thought the Court should be aware of.[1] Neither Atalig's initial counsel nor appellee Tokai had raised any of these concerns in their briefs.

First, he noted that the notice of appeal may not be timely

---

[1]Atalig notified this Court that his counsel for oral argument would be different from his counsel who prepared the brief.

84

filed with regard to the November 9, 1990, order. Second, he explained that Atalig's brief asserted that the issue on appeal was only with regard to the "November 19, 1990," order. Third, he wished to raise the issue of whether the imposition of sanctions was null and void because the trial judge later disqualified himself on the ground that his impartiality might reasonably be questioned. 1 CMC § 3308(a) and Canon 3(C)(a), Code of Judicial Conduct.

We will address all the additional concerns because the first two deal with our jurisdiction and the third deals with the important consideration of public confidence in the integrity of the judicial process. We will address all the three additional concerns of Atalig before we address the issue stated in the brief.

### Filing of Notice of Appeal

The order imposing sanctions issued on November 9, 1991. The order setting the amount of the sanctions issued on December 19, 1991. The notice of appeal was filed on January 18, 1991. The question arises whether this Court has jurisdiction to hear an appeal regarding the November 9, 1991, order since more than 30 days have elapsed. Atalig acknowledges, and the Court agrees, that there is no problem concerning the timely filing of the notice of appeal regarding the December 19, 1991, order. The issue is whether this Court has jurisdiction to entertain an appeal dealing with the November 9, 1991, order.

We hold that the January 18, 1991, notice of appeal timely

85

invoked the jurisdiction of this Court with regard to both the November 9, 1991, and December 19, 1991, orders. The November 9 order imposed sanctions. The November 9 order did not become final until the court determined the amount of the sanctions in its December 19 order.[2]

If we were to rule otherwise, it is conceivable that needless appeals might be filed just to preserve the right. An appeal might not be filed if a later order determining the amount issued in a nominal sum of money. In addition, such a rule would contravene the finality rule set out in Commonwealth v. Hasinto, No. 90-033, 1 N.Mar.I. 179 (Oct. 15, 1990).

## Issue on Appeal

The January 18, 1991, notice of appeal states that it is appealing the November 9, 1990, and December 19, 1990, orders. It does not specify the issues. In his brief, Atalig stated that the issue on appeal was the appropriateness of the order of "November 19, 1990."

If one were to conclude that the word "November" was a typographical error and Atalig meant "December 19, 1990," then the question is whether Atalig adequately preserved his right to appeal the November 9 imposition of sanctions. An argument could be made

---

[2]The Court notes that its use of the word "final" is only as to the issue of sanctions. We do not imply that the December 19, 1990, order was the final order as to the merits of the case. The December 19 order was final under the collateral order doctrine, enunciated in Commonwealth v. Hasinto, No. 90-033, 1 N.Mar.I. 179 (Oct. 15, 1990).

that since he was appealing only the December 19, 1990, order, he was only appealing the amount of the sanctions and not the imposition.

On the other hand, if the error was in the number "19," and Atalig meant "November 9, 1990," then there would be a problem as to the timeliness of the appeal if we held that the 30 day limit starts to run from the November 9, 1990, order. Since we have held that the 30 day appeal period starts to run from December 19, 1990, this is no longer an issue.

If the error was in the word "November," we hold that such error was of no consequence. Atalig's brief clearly conveys the message that he is arguing against the November 9 imposition of sanctions. He does not argue that the amount determined on December 19 was excessive. He argues that he should not have been sanctioned at all.

Clearly, the typographical error concerned the use of the number "19." And as we have already held, he timely invoked the jurisdiction of this Court as to the November 9, 1990, order.

### Disqualification

Atalig was sanctioned by the trial judge. After he was sanctioned, Lucky hired Theodore R. Mitchell (hereafter Mitchell) to continue with the prosecution of the case. Mitchell sought recusal of the trial judge on the ground that his impartiality might reasonably be questioned since he was represented by the same counsel for Tokai in another lawsuit. The trial judge recused

87

himself.

Since the trial judge recused himself on grounds that existed since the time he imposed the sanctions, are the sanction orders null and void? Our answer is no.

When the original complaint was filed, up to the time that the sanctions were imposed, Atalig knew, or should have known, of the disqualifying facts later brought out by Mitchell. Yet he did not move to disqualify. In addition, we deem the disqualifying facts in this case to be insubstantial for purposes of vacating an existing order.

The case of Liljeberg v. Health Services Acquisition Corp., 108 S.Ct. 2194 (1988), cited by Atalig at oral argument, is distinguishable. That case involved a judgment of a trial court in which the trial judge had a substantial interest in the outcome of the case. The factual basis for the ground for disqualification was substantial.[3] In addition, the trial judge in that case refused to recuse himself after such a motion was made. The U. S. Supreme Court found the failure to recuse inexcusable, again, because of the factual basis for the disqualification.

In this case, the trial judge does not have a substantial

_____

[3]The trial court judge was a member of Loyola University's Board of Trustees "while Liljeberg was negotiating with Loyola to purchase a parcel of land on which to construct a hospital. The success and benefit to Loyola of these negotiations turned, in large part, on Liljeberg prevailing in the litigation before Judge Collins." 108 S.Ct. at 2197. Judge Collins ruled in Liljeberg's favor.

interest in the outcome of the case. The ground for disqualification was the fact that counsel for Tokai was also counsel for the trial judge in an unrelated matter. This ground for disqualification is not substantial for purposes of vacating an existing order. Furthermore, as noted above, Atalig did not seek the recusal of the trial judge.

There is no need to address the question of whether the trial judge's failure to recuse himself on his own motion was inexcusable. We hold that existing orders and/or judgments in a case such as this will not be vacated due to a later disqualification unless the factual basis of the ground for disqualification is substantial and the failure to recuse is inexcusable.

## The Stated Issue on Appeal

### RULE 11

Rule 11, Com.R.Civ.P., in pertinent part, states that

> The signature of any attorney or party constitutes a certificate by him that he had read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11, Com.R.Civ.P., is almost identical to our Rule 38(b), R.App.Proc. We have interpreted R.App.Proc. 38(b) in _Tenorio v._

<u>Superior Court</u>, No. 89-002, 1 N.Mar.I. 12 (Mar. 19, 1990). It would, therefore, be helpful to look at the <u>Tenorio</u> case for guidance.

 In <u>Tenorio</u>, we held that

> Sanctions may be imposed under [rule 11] if a document is not well grounded in fact. An objective reasonableness test is used to determine whether an adequate prefiling inquiry has occurred. The circumstances of each case are considered, including the time available for prefiling information. Furthermore, a document is not well grounded in fact if any attorney has misrepresented the evidence.
>
> Sanctions may also be imposed under [rule 11] if a document is not well grounded in law. A position is warranted by existing law if it is supported by a non-frivolous legal argument. A legal argument is non-frivolous if it is likely to succeed on the merits or if reasonable persons could differ as to the likelihood of its success on the merits. A good faith argument for a change of existing law may also be advanced. An objective reasonableness test includes analysis of whether the document candidly acknowledges the current adverse law and argues for a change in existing law.
>
> Finally, sanctions may be imposed under [rule 11] if a document is interposed for an improper purpose. Even a document well grounded in fact and law can violate this rule if there is evidence of the signer's bad faith. Whether a signer acted with an improper purpose is judged under an objective standard.

<u>Id.</u>, slip op. at 9-11, 1 N.Mar.I. at 16. (Citations omitted.)

The trial court's order found, based on the complaint and the exhibits, that Atalig was privy to most, if not all, of the events leading up to the filing of the complaint. The factual basis for

the complaint was essentially the personal knowledge of Lucky's attorney, Atalig. There was little, if any, reliance on the client for prefiling inquiry. Order, at 3-4. In addition, the trial court found that "the factual basis of the pleading can be ascertained with a high degree of certainty because it rests primarily on written documents - some of which were prepared by the attorney filing the complaint." Order, at 4. The court found that all the allegations prior to the fifth cause of action had nothing to do with Tokai. All the paragraphs did was to show that Tokai leased the property from Victorino N. Igitol (hereafter Igitol) on April 20, 1990, knowing that Antonio Guerrero had executed the conditional lease agreement with Lucky on February 27, 1990. Order, at 6.

The trial court found the fifth cause of action "a classic, clear cut case of a pleading which is legally unreasonable (and totally unsupportable) and without factual foundation." Order, at 8. In addition, the trial court noted that the declaration filed by Atalig in opposition to the motion for sanctions does not explain how the Consumer Protection Act applies to Tokai or if the theory espoused is warranted by existing law or a good faith extension of that law. Order, at 9.

The trial court is correct on this point.[4] Atalig's argument

---

[4]We note that Atalig's citations to the Consumer Protection Act refer to the old law that was adopted from the Trust Territory Code. That Consumer Protection Act was amended by P.L. No. 6-46, 

91

that this count is "debatable" is a conclusion without any support. He does not state how it is debatable. From just looking at the former § 5103, it is difficult to see how Tokai could be seen as conducting trade or commerce. The term trade or commerce is defined in former § 5102(b) as "the advertising, offering for sale, sale, or distribution of . . . any property . . . ." The factual allegations in the complaint do not state how Tokai was advertising, offering for sale, selling, or distributing the lot when it leased the land from Igitol.

Atalig did not show, or attempt to show, in his brief how he has a legally plausible theory under the sixth and seventh counts. Normally, we will consider an issue as waived or abandoned if it is not argued.[5] Ratcliff v. Security Nat. Bank, 670 P.2d 1139 (Alaska 1983); Cardin v. Morrison-Knudsen, 603 P.2d 862 (Wyo. 1979). However, in this particular case, we will independently review the sixth and seventh causes of action because we believe that the trial court was clearly wrong on its statement of the law that an enforceable contract is a crucial element for the tort of intentional interference with contract relations and economic

---

effective February 2, 1990, and the section numbers were rearranged. Atalig should have cited to the new section numbers to minimize confusion. However, he had no plausible argument as to how the law, in its original version or in its amended version, applied to Tokai.

[5]To say that allegations in a complaint are debatable is not an argument. It is a conclusion that must be supported by legally plausible arguments.

relations. The fact that Atalig does not offer much legal analysis of the issues involved does not prevent this Court, in its discretion; from reaching these issues. Ratcliff v. Security Nat. Bank, supra, at 1141 n.4. Contentions raised on appeal that are unsupported by relevant argument will be considered if well-taken on their face. Griffin v. Dept. of Social & Health Services, 590 P.2d 816, 822 n.1 (Wash. 1979); Whatcom County v. Kane, 640 P.2d 1075 (Wash. App. 1982).

Our independent review of the sixth and seventh causes of action in the original complaint lead us to conclude that no sanctions are warranted.

 The laws on interference with contract relations and with economic relations in the Commonwealth are as expressed in the restatements of the law.[6]

 As noted by the trial judge in his Order, the applicable restatement provision is the Restatement (Second) of Torts § 766 (1979). This section states that:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other

---

[6]In the absence of written law or local customary law to the contrary, the rules of the common law as expressed in the restatements of the law, approved by the American Law Institute, or as generally understood and applied in the United States if they are not so expressed are the rules of decision in the courts of the Commonwealth. 7 CMC § 3401.

93

from the failure of the third person to perform the contract.

The trial court ruled that a "valid" contract is needed for these torts. According to W. Prosser, Law of Torts 931 (4th ed. 1971) (hereafter Prosser), the question of the validity of a contract goes to whether the contract is illegal or contrary to public policy. There is nothing in the record that suggests that the CLA, or the option that Guerrero had from Igitol, was illegal or contrary to public policy.

▉here is no requirement to have an enforceable contract, or a contract that is not voidable, for the tort of interference with performance of contract. According to Comment f of Section 766 of the Restatement (Second) of Torts,

> It is not, however, necessary that the contract be legally enforceable against the third person. A promise may be a valid and subsisting contract even though it is voidable. (See Restatement, Second, Contracts § 13)[now § 7 in the 1981 edition]. The third person may have a defense against action on the contract that would permit him to avoid it and escape liability on it if he sees fit to do so. Until he does, the contract is a valid and subsisting relation, with which the actor is not permitted to interfere improperly. Thus, by reason of the statute of frauds, formal defects, lack of mutuality, infancy, unconscionable provisions, conditions precedent to the obligation or even uncertainty of particular terms, the third person may be in a position to avoid liability for any breach. The defendant actor is not, however, for that reason free to interfere with performance of the contract before it is avoided.

See also Prosser at 932.

According to <u>Restatement (Second) of Contracts</u> § 7 (1981),

> A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.

In section 8 of the same restatement, it is stated that,

> An unenforceable contract is one for the breach of which neither the remedy of damages nor the remedy of specific performance is available, but which is recognized in some other way as creating a duty of performance, though there has been no ratification.

As shown in Comment f of the <u>Restatement (Second) of Torts</u> § 766, for purposes of the tort of interference with performance of contract, it is not a requirement that there exist an enforceable contract, or a contract that is not voidable.

The original complaint, under which sanctions were imposed, gave reasonable notice to Tokai of Lucky's basis for its sixth and seventh claims.

Paragraph 12 of the original complaint alleges that Lucky and Guerrero executed on February 27, 1990, a Conditional Lease Agreement, and attached a copy of the CLA as Exhibit D. Paragraph 13 alleges that an Addendum to the CLA was executed, and attached a copy as Exhibit E. There is an allegation that both documents were recorded. In Paragraph 16, it is alleged that Igitol executed an Agreement to Lease to Tokai on April 20, 1990, on the same piece of property. Paragraphs 17 and 18 allege that Tokai and Igitol knew of the CLA on or before April 20, 1990. It is alleged in

95

Paragraph 19 that Atalig notified Guerrero in writing on May 4, 1990, about the April 20, 1990, Agreement to Lease. In Paragraph 20, it is alleged that Guerrero executed a Quitclaim Deed to Igitol involving the same property. Further down the original complaint, in Paragraph 36, it is alleged that Guerrero had an option to purchase the property from Igitol.

Exhibit D to the original complaint is the CLA. This document stated that Guerrero was to get $1,000 down, 5+ million dollars upon execution of a lease, with the balance of 2+ million dollars to be paid in installments. Exhibit E to the original complaint is the Addendum. This document changed the terms of payment to $1,000 down, 2+ million dollars upon execution of a lease, with the balance of 5+ million dollars to be paid in installments. This document also changed the requirement as to Lot B. The CLA originally stated that Lucky had the option to lease Lot C, with or without Lot B. The Addendum changed this option and stated that another CLA had to be executed with regard to Lot B.

Exhibit F to the original complaint is the Agreement to Lease between Igitol and Tokai. This document shows that Igitol is to receive $900,000+ down, with the balance of 9+ million dollars upon closing, which would be 45 days after a good title report.

The trial judge's order stated that the CLA made Lucky's lease contingent upon Guerrero acquiring a CLA to Lot B. The order noted that Guerrero did not have any control over the disposition of Lot B. He found that Guerrero never owned or had any right to lease

96

Lot B to Lucky. Therefore, the trial judge concluded that the seventh cause of action was devoid of merit. However, these are facts that would permit Guerrero to avoid the contract with Lucky if and when Lucky sought action on the contract. But as stated in the restatement, "Until he does, the contract is a valid and subsisting relation, with which the actor is not permitted to interfere." Restatement (Second) of Torts § 766, Comment f.

The allegations and exhibits would reasonably give notice to Tokai that it may be liable to Lucky for the torts of interference with contract and with economic relations. Atalig pled with sufficient particularity facts that reasonably could support the elements of these alleged torts of interference. Restatement (Second) of Torts § 766. This is particularly so in light of our decision herein that an enforceable contract is not a crucial element of the torts of interference with contract or economic relations. Consequently, Atalig cannot be sanctioned merely for pleading, however unartfully, causes of action which are legally plausible.

Although the sixth and seventh original claims were deleted when the first amended complaint was filed, this fact does not support Tokai's argument that Lucky had no basis for the two causes of action. The deletions were made by a different attorney. Why the subsequent attorney made the deletions are not on the record. Even if the reasons were on the record, we would not be bound to such reasons. We would still evaluate the original complaint

97

independently in our review of the sanctions imposed.

## Fees and Costs on Appeal

Tokai requests fees and costs under Rule 38, R.App.Proc.[7] It does not specify whether it seeks fees and costs under subsection (a) or (b). We assume that it seeks fees and costs under subsection (a) because it argues that the appeal was frivolous. It contends that Atalig provided "no sound reasons for appeal," and

---

[7]

(a) If this Court determines that an appeal is frivolous, it may award just damages and single or double costs to the appellee, including reasonable attorney's fees.

(b) Every brief, motion, and any other pleading of a party represented by an attorney shall be signed by an attorney or record. A party who is not represented by an attorney shall sign the same. The signature of an attorney or party constitutes a certification by the signer that the signer has read the brief, motion, or any other pleading; that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law (or a good faith argument for the amendment or repeal of existing law can be made) and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay, or needless increase in the cost of litigation. If a brief, motion, or any other pleading is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the signer, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the brief, motion, or any other pleading, including a reasonable attorney's fee.

98

"the Record on Appeal was not timely filed."

Although <u>Tenorio v. Superior Court</u>, <u>supra</u>, specifically dealt with Rule 38(b), we noted in that case that, "Sanctions are imposed under [Rule 38(a)] for many of the reasons that sanctions are imposed under [Rule 38(b)]." <u>Id.</u>, n.5 at 9. (Citation omitted.) As such, we will be guided by the analysis in the <u>Tenorio</u> case.

We agree that the appeal on the imposition of sanctions as to the fifth cause of action was frivolous. We do not see how Tokai could have violated the Consumer Protection Act as alleged in the complaint. This cause of action is not well grounded in law. It is not supported by any valid legal argument. As noted earlier, there is no basis for the legal argument that Tokai was conducting trade or commerce when it entered into a lease agreement with Igitol. An imposition of single costs and reasonable attorney's fees will be assessed as to this cause of action.

Rule 38(a) states that an award of damages and costs and fees may be made if the appeal is frivolous. We hold that this does not mean that the entire appeal must be frivolous before we are able to impose sanctions. We have the discretion to impose damages and/or costs and/or reasonable attorney's fees as to each issue on appeal.

## CONCLUSION

Based on the above, we **AFFIRM** as to the sanctions for the fifth cause of action, and **REVERSE** as to the sixth and seventh causes of action. The case is **REMANDED** to allow the trial court to

re-determine the amount of sanctions based only on the fifth cause of action.

Tokai is awarded single costs and reasonable attorney's fees against both Atalig and his initial counsel on appeal, Miguel S. Demapan, equally, for the filing of a frivolous appeal as to the fifth count. Tokai shall file and serve its request for costs and reasonable attorney's fees as to the fifth count within 30 days from the date of this opinion. The costs and attorneys' fees shall be separately filed, itemized, and verified. Atalig and Miguel S. Demapan shall have 14 days from the date of receipt of the request for costs and attorneys' fees to file and serve objections.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Justice

Jesus C. Borja
Justice